We'll now hear 18-1452, Rumsey Land v. RLH Thank you, your honors. May it please the court, my name is Ron Wilcox. Your voice doesn't carry a lot. Would you move the My name is Ron Wilcox, appearing on behalf of the appellant, Rumsey Land Company, and we're here today to address essentially two issues. The duty of two potential bidders in a bankruptcy proceeding to disclose an agreement between themselves regarding the assets that have been placed up for auction, and second of all, whether that agreement constituted an intent to control the assets at issue in the auction. To give a little background, it's necessary to go through the chronology of events. In January of 2015, January 15, 2010, Rumsey Land Company filed for bankruptcy. Pueblo Bank and Trust had a first deed of trust on their land that was at issue in the bankruptcy proceeding, and $5.64 million, and valued the property in that proof of claim at $7.77 million. RLH came along, Resource Land Holdings, well referred to as RLH, and agreed to buy the Rumsey property for $7.5 million, plus a royalty interest on confronting with an order to approve that sale. Objections were made, and the bankruptcy court denied the sale order and asked that further efforts be made to market the property. Rumsey went out, secured a marketing company, and began undertaking efforts to take more steps to essentially market the property at Pueblo Bank and Trust, and essentially purchase its note, the note, first deed of trust that Pueblo Bank and Trust had on the property. That occurred on December 1st, 2010, when RLH and Pueblo Bank and Trust entered into a loan purchase agreement in which RLH agreed to buy Pueblo Bank and Trust's note for $4.6 million, and also to acquire a stipulated judgment of $5.8 million. In the beginning of 2011, Pueblo Bank and Trust indicated its belief that it thought that the property would sell at bankruptcy auction for more than the base value of the note. RLH, in contrast, or consistent with that, indicated that if it had to go to an auction, it would probably end up having to pay more for the property than it would if it simply bought the note. A dispute arose between RLH and Pueblo Bank and Trust over whether the loan purchase agreement had litigation in which RLH filed suit to Pueblo State District Court to enforce the loan purchase agreement that it had entered into with Pueblo Bank and Trust. And RLH specifically made a representation in that litigation that if it were not enforced, if the loan purchase agreement would not be enforced by the court, RLH might have to make a cash bid exceeding the amount agreed to by RLH and Pueblo Bank and Trust in their loan purchase agreement. An auction was held on May 11, 2011. Pueblo Bank and Trust credit bid $5 million as a stocking horse and backup bidder for the property. RLH bid $4 million in a company known as Confluence bid $8.6 million. On May 25th, and this is one of the issues of contention, Rumsey Land circulated a proposed sale order to counsel for Pueblo Bank and Trust and also served it on counsel for RLH and indicated in that proposed order that it submitted to the court that the debtor in each successful bidder and the backup bidder have fully disclosed all consideration to be given by each successful bidder and the backup bidder and all other agreements or arrangements entered into by each successful bidder and the backup bidder in connection with the sale of the assets. At that point, despite having an opportunity to comment on the order and having been served with a copy of the order, neither Pueblo Bank and Trust nor RLH disclosed the fact that they had previously, in December of 2010, entered into the loan purchase agreement between themselves or that RLH had initiated litigation in Pueblo State District Court to enforce that order. RLH wasn't a part of that agreement, right, that you just talked about. RLH, it was not circulated to RLH before the proposed order got filed with a bankruptcy court, but RLH was served with a copy of the proposed order when it was filed with the... But it wasn't a part of the agreement to Pueblo's agreement to buy the property, the stocking horse bidder. RLH had nothing to accept it at the auction, that's correct. Confluence elected not to proceed with its bid and Rumsey accepted Pueblo Bank and Trust as the backup bidder. On September 13, 2011, RLH and Pueblo Bank and Trust settled a state court litigation by having Pueblo Bank and Trust agreeing to sell RLH the property at issue for 4.75 million dollars and that agreement did not include purchase of Pueblo Bank and Trust notes. On October 4, 2011, Pueblo Bank and Trust circulated a proposed supplemental sale order to RLH's counsel before it submitted the proposed order to the bankruptcy court for approval. Submitted it to RLH's counsel for comment and then later filed and served that order, proposed order, with the court and served it on RLH's counsel. That proposed supplemental sale order confirmed that the property was to be sold free and clear of all liens, encumbrances, claims, and interests except those expressly disclosed in the proposed sale order. That order did not mention the loan purchase agreement, the state court litigation, or the settlement that Pueblo Bank and Trust and RLH had entered into just several weeks earlier. The supplemental order also contained a finding of fact that Pueblo Bank and Trust's acquisition of the property was being undertaken without collusion and in good faith. The bankruptcy court then entered that transfer of title of the property to Pueblo Bank and Trust. Pueblo Bank and Trust ultimately transferred the property to RLH pursuant to its settlement agreement that had reached in the state court litigation, but again neither Pueblo Bank and Trust or RLH ever disclosed the LPA, the state court litigation, or the settlement agreement that they had reached when they tendered that October 4th, 2011 proposed order to the bankruptcy court. Holmes E. Land later found out about the agreement that had been reached, not only the loan purchase agreement, but the settlement agreement, and asked that the bankruptcy court reopen its bankruptcy case, filed an adversary proceeding. Bankruptcy Court Judge Tallman denied motions to dismiss Rumsey's case. RLH then moved for summary judgment on Rumsey's first, second, and fourth, and fifth claims for relief, and Pueblo Bank and Trust filed a motion for joinder in RLH's motion for summary judgment should be entered in its favor on the claims against it. Instead, it relied solely on the arguments raised by RLH. As a result, Rumsey Land responded to the arguments made in RLH's motion for summary judgment because Pueblo Bank and Trust hadn't raised any independent grounds as to its liability. Rumsey Land Company had no reason to respond to arguments that had not been made by Pueblo Bank and Trust. The district court entered summary judgment on RLH's motion for summary judgment, and also held that it was entering summary judgment on Pueblo Bank and Trust claims because Rumsey hadn't responded to those claims, even though they hadn't been raised. The primary source of error in this case, as we've alleged, is that, first of all, the district court, when determining whether RLH and Pueblo Bank and Trust had a duty to disclose the loan purchase agreement, their state court litigation, and the settlement agreement they reached, had a relationship of trust and confidence giving rise to a duty to disclose under restatement, second of torts, section 551 2A, which requires a fiduciary relationship or a relationship of trust and confidence to give rise to a duty to disclose. We have contended that it was error for the court not to consider the additional subsections of 551 2B and 2E as giving rise to an obligation or a duty to disclose. I'm confused about something. You're saying that you're raising a claim under A and not under B and E? No. No, Your Honor. You said the opposite. Did I? I apologize. No, no, I understood you to say the opposite, but you're saying you're not raising a claim under A, you are raising claims under B and E, is that right? That's correct, Your Honor. That's what I thought beforehand and I misunderstood. And I just want to say that our position has been that the, at least with respect to the proposed orders that were submitted to the court in May of 2011, in October of 2011, those, a duty to disclose arose because those made affirmative statements of fact that were purported to tell the whole truth but did not. They were misleading and that they purported to indicate that the parties did not have any agreements. That was a representation made only by Pueblo Bank, right? That's why I said RLH was not a party to that agreement. That, yes, Your Honor, with respect to the first one in May, Pueblo Bank and Trust had a opportunity to comment on that, but with respect to the October 4th, 2011 one, Pueblo Bank and Circulated that order to counsel for RLH for comment before it got submitted to the court. So certainly RLH had an opportunity at that point to correct any misstatements in that order, the draft, before it got submitted to the court. The question is if the goer had any duty to correct it. That's the question. Well, I think they did because there was an, that gave rise to an expectation circulating that proposed order for comment, an expectation under 5512E, that it would be disclosed. And second of all, it purported to state facts that were misleading because it didn't tell the whole story. Could I ask about one other part of 5512, and this is really the initial sentence, which refers to a business transaction. Is a bankruptcy auction a business transaction under the restatement? I think for purposes of this, the district court certainly considers it, or did consider it to be, because that is a threshold question that has to be addressed before you move on to the subsections. And it's, and there would have been no reason for the district court to move on to subsection A if in fact it hadn't considered Pueblo Bank and RLH to be parties. Well, related question, since RLH ended up not having the winning bid, why would it be party to a business transaction? Well, also I think under the Church case, as long as you take part in a transaction, that's considered sufficient to trigger 551. And that is the case that we have cited, and certainly RLH did take part in a transaction, not only with respect to the initial auction, but also, you know, it did participate in the tendering of the proposed orders. I have a quick question. How is Rumsey Land harmed by not knowing about RLH's participation? Certainly our position has been that at that point, by entering into these agreements, the effect of these agreements, as Judge removed a potential bidder from the process. And I think that as long as Rumsey had been aware of that situation, Rumsey could have objected. Rumsey could have asked for a longer bid process, period for bidding. It could have elected to take portions of the property and break them up so that they'd be subject to more vibrant bidding. Is any of that in the record? Was that argued to the district court? I don't know that that was actually raised to the district court. It's really a question of duty of disclosure. Well, but you have to show damages, and is there any evidence that this property could have been sold for a higher price? Is there any evidence in the record of someone else willing to pay more for it? Well, three things, Your Honor. First of all, RLH did recognize that it might have to make a higher offer than the note amount, that that was a reasonable expectation. Number two, Pueblo Bank and Trust expressed its belief that the property would be sold for more than the bank amount, and then there was considerable evidence before the district court regarding the due diligence that RLH had conducted of the property, showing that the value was substantially more than what eventually the bid resulted in. Is there anything that says two people can't get together and bid on a piece of property? I assume not. Well, not if they disclose it. I think that's the gist of the situation here is, is it improper for them to do that? As long as they disclose it, that's the issue. Give the debtor an opportunity to object, give the bankruptcy court an opportunity. It's not like you didn't know that RLH was out there and had bid in the past, so he could have been approached, I assume. Yes, and they did participate in the auction. I know that the other side has argued that Rule 3001 applies, but that was not an argument that got raised in the district court. My time is up. Just one repayment agreement for the first time. I want to say that it was in, I believe it was sometime in early 2015, your honor, because by June 10, 2015 is when Rumsey filed its adversary proceeding, but that was an issue that the district court found to have disputed issues of material fact. Thank you. Thank you, counsel. Thank you. May it please the court, my name is Sarah Wallace, and I represent Resource Land Holdings. With me is David Rich, counsel for Pueblo Bank and Trust, and so I'm going to try to give him some time to respond to questions specific about Pueblo Bank and Trust. We agree with counsel for Rumsey Land that there are essentially two questions here, whether or not there was a duty to disclose the fact that RLH had unsuccessfully tried to purchase Pueblo Bank and Trust debt slash proof of claim, and whether RLH and Pueblo Bank and the auction in May of 2011. Have you reserved, at least for purposes of appeal, an argument that there was no damage from any possible breach of duty? Is that not before us? Your honor, we argued in summary judgment that there was no damage, and that has consistently been our position. The district court did not get to that issue because she decided on the duty to disclose, but I certainly think that this court... Well, did your response raise that as an alternative ground for affirmance? No, we did not, your honor. Okay, so that's really not before us, then. No, I think that should the Rumsey-Allen prevail, we'll go back to the district court, she would certainly have the opportunity to rule on that issue. In terms of... So there's really actually no disputed facts in this question, and everybody generally agrees on what the law is, which is 500, 551, the restatement 551, subsection 2. The question really is whether the plaintiff, in response to our summary judgment, was able to come up with enough facts to meet the exceptions in 551, and the district court indisputably found that it did not. Well, the district court did emphasize this fiduciary relationship, which I think everyone agrees doesn't exist. She was also very consistent and said numerous times throughout her order that RLH was nothing more than a prospective bidder who had lost at auction. And I think that that really, in terms of the duty to disclose, is kind of a key factor. If you look at the timeline that I prepared, the two blocks that are yellow are when we were allegedly supposed to have made this disclosure, and key to that is neither one of those are disclosures that RLH made. RLH didn't submit the proposed orders at issue, and at that point in time, it was nothing more than a prospective bidder who had lost. And if you look at the timeline, it was way back in February of 2011 that this alleged agreement was terminated. While RLH thought it was improper termination, the fact of the matter is the record shows it was terminated. So there was no agreement to have disclosed, even if RLH was still part of the transaction, which it was not. So if you look at the specific application that the plaintiff is alleging RLH, when RLH should have made these disclosures. Could I just, this is similar to the question I asked Mr. Wilcox, but does RLH satisfy the party business transaction element of the restatement? Your Honor, it's my view that that was, in large part, the district court's ruling. She essentially said on numerous occasions, RLH wasn't part of this. So it's our view that RLH was not part of the business transaction. I do think that the restatement could apply in this situation to a bid at an auction. But the fact of the matter is, is the transaction went on and RLH was not in it. RLH did not even attend the auction. It had made a proposed stocking horse bid of $4 million, which was lower than what Pueblo Bank and Trust had made. It didn't attend the auction. It had no substantive role in the bankruptcy proceedings after that time. If RLH is not a party to a business transaction, then that would be an important conclusion. So are you saying it's not, or that it is? You say district court thought it was? No, and we agree. We don't think that you get past the fact that we were a business transaction, party to the transaction. If you do, we still don't think that the plaintiff has put forth facts. Is there any legal authority that can help us on that question? Well, so Resource Land Holdings cited two cases in which the parties had found that a party wasn't a business to the transaction. One was the Spring Creek case, and one was the Visceroy case. In response, Rumsey Land cited the Church case, which was a district court case that recently came down that describes that you need to be part of the transaction. And I would submit to you that even under the Church case, Resource Land Holding might have been part of the transaction. It certainly was part of the transaction when it made its stocking horse bid that was rejected. It was certainly not part of the transaction in any manner after that point in time because it didn't participate at all. So if you turn to the application of 551.2b, assuming that this court were to find that RLH was party to the transaction, the Rumsey Land argued essentially under subsection b, which requires an ambiguous statement that needs to be corrected, that the ambiguous statement was a statement that on summary judgment it denied occurred. Rumsey Land cannot have it both ways. You can't allege that a statement never occurred and then say that very statement is the exception upon which we are relying to have a duty to disclose. You completed an alternative. I thought your better argument was that if the statement was made and it's time barred, then you were right. Exactly. The reason it denied the statement occurred because if the statement occurred, then all this action was time barred. So it denied that it occurred, but then when it needed some sort of ambiguity, that's what it relied on. I don't think you can have it both ways. I think you can argue an alternative, but if you do... Well, right. If the court had accepted that the statement occurred, then she would have granted summary judgment on notice under the statute of limitations. In terms of 551.2e, you have this issue of custom and trade. You have to have a duty to disclose because in the custom of trades in the industry that you're in or the situation you're in, you would be expected to disclose the information. The problem with that argument is that the custom and trade when it comes to purchasing proofs of claim, which is what this really was, that's what Pueblo Bank and Trust had. The debt had been turned into a proof of claim in the bankruptcy court. The reason that RLH wanted to purchase it was it could use that credit bid as a way to bid with. The custom and trade in the bankruptcy court is really cool. There's a bankruptcy rule that addresses this very issue. The bankruptcy rule is 3001e, and the bankruptcy rule specifically says that when one party purchases the proof of a claim of another party, at the time of transfer, the bankruptcy court must give notice to the transferor to make sure that they agree that they transferred the claim, and then the bankruptcy court will substitute the transferor e for the transferor. Here, that transfer never occurred, so there was no notice under the bankruptcy rules that was required. Had RLH successfully purchased this debt, it would have had to have followed 3001e. So to come to this court and say, well, the custom and trade of bankruptcy court is to disclose something is completely contrary to the bankruptcy rules themselves, which have a notice requirement, and it isn't until transfer. In terms of the 363n claim, which is the prohibition against coming to an agreement to control the price of the bid, not only do you need an agreement, it actually needs to have control of the price, neither of which has been successfully put forth to the district court in that regard. First of all, there was no agreement. The parties were litigating over the fact that Pueblo Bank and Trust had refused to close on this transfer of the proof of claim. So there was no agreement, and it certainly didn't control the sale price. And this goes a little bit to the question that you were asking, I believe, Judge Seymour, earlier, which is, what were the damages here? The evidence is clear, if you look at my timeline again, that while RLH had originally made an offer to purchase the property for $7.4 million back in 2010, that was prior to due diligence, and the record is clear on that. The subsequent amounts that RLH was willing to pay were always lower than the amount that Pueblo Bank and Trust actually bid. It was willing to buy the debt for $4.6 million, and then it ultimately bought the property for $4.75 million. So the amount that Rumsey Land received, the $5 million, was in excess of anything that RLH was ever willing to pay. So you can't control the price, or I don't think the statute was meant to prevent people from lowering the amount. This whole idea of the 363N claim is to prevent RLH and Pueblo Bank and Trust from making an agreement whereby RLH is like, hey, we think it's worth $6 million. You credit bid for $5 million. We won't bid, and then after the sale, we'll buy it from you for $6 million, and you just get the extra million instead of the debtor. That's not what has happened here. RLH purchased it for less than Rumsey Land received. So there's no evidence that in any way did this agreement, which wasn't even an agreement because it had been terminated, would have controlled the sale price. If it's okay with your honors, I'm going to turn the floor to Mr. Rich in case you have any questions about Pueblo Bank and Trust. Thank you, ma'am. Please, the court. I'm David Rich. I represent the Pueblo Bank and Trust Company. From Pueblo Bank and Trust Company's perspective, the issue which wasn't addressed by Rumsey in the district court but does so now is what was the bank's duty to disclose and what should have been disclosed. The relationship between the bank and Rumsey is that of a debtor-creditor relationship. There was no fiduciary duties between the two parties, no special relationships which would impose a duty other than those found between a debtor and a creditor. The next issue is what is there to be disclosed. The bank has maintained and the evidence supports the bank's position that the loan purchase agreement between the bank and RLH was terminated on February 1, 2011, and the deposit money was returned to them. When the bankruptcy court approved the auction procedures for the property on March 2, 2011, there was nothing for the bank to disclose. There was no pending agreement between the bank and RLH of either its loan or the proof of claim. When the Pueblo Bank and Trust agreed to be the credit bidder's stalking horse, Rumsey filed a notice in April of 2011. At that time, there was, again, no agreement between the bank and RLH. It had already been terminated months before. At the time of the auction on May 11, 2019, the bank still owned the loan and the proof of claim. The bank continuously owned the loan and the proof of claim throughout the entire Rumsey bankruptcy process. There was nothing to disclose in the order or at any time. The bank concedes that if, in fact, the transfer had occurred, that RLH had acquired the loan, then under Bankruptcy Rule 3001E, that transfer would have been noticed out and the court and all the parties would know of the transfer. But until that occurs, until that transfer actually occurs, there was nothing that needed disclosure. Knowledge of the failed transaction would not have affected the bid at all. Confluence came in and bid $8.6 million, which was greater than Pueblo Bank's credit bid and greater than the proposed bid by RLH. And I see that I am out of time. If you have any questions. Thank you, Counsel. Thank you for my brief time. Case is submitted. Counsel are excused. We'll turn to our.